1  VERA M. ELSON (State Bar No. 156327)
   velson@wsgr.com
2  ULRICO ROSALES (State Bar No. 139809)
   rrosales@wsgr.com
3  CHRISTOPHER D. MAYS (State Bar No. 266510)
   cmays@wsgr.com
4  MARGARET THERING (State Bar No. 261618)
   mthering@wsgr.com
5  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
6  650 Page Mill Road
   Palo Alto, CA 94304
7  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
8
   Attorneys for Plaintiff
9  VENCLOSE INC.

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  VENCLOSE INC.                    )  CASE NO.
                                     )
14                                   )  COMPLAINT OF PLAINTIFF
              Plaintiff,             )  VENCLOSE INC. FOR
15                                   )  DECLARATORY JUDGMENT OF
          v.                         )  PATENT OWNERSHIP
16                                   )
    COVIDIEN LP,                     )  **DEMAND FOR JURY TRIAL**
17  COVIDIEN HOLDING INC.            )
                                     )
18            Defendants.            )
                                     )
19  _____)

20

21              **COMPLAINT FOR DECLARATORY JUDGMENT**

22      Plaintiff Venclose Inc. ("Venclose") hereby files this Complaint against Defendants

23  Covidien LP and Covidien Holding Inc. (collectively, "Covidien") as follows:

24                        **INTRODUCTION**

25      1.  Venclose is an innovative startup company based in San Jose, California.  Venclose

26  has developed a next generation radiofrequency device for treating vein disease, more

27  colloquially referred to as "varicose veins"; a condition from which an estimated over 25 million

28  Americans suffer.  This past September, the Food and Drug Administration ("FDA") gave its

clearance for Venclose to commercially distribute its products, and doctors have reported both good quality of treatment and several significant Venclose System improvements over current radiofrequency technology that make treatments faster, simpler and more precise.

2.   Covidien, on the other hand, is a large multi-national conglomerate that, on information and belief, employs over 40,000 employees worldwide.

3.   On information and belief, in 2014 Covidien reported net product revenues of $10.66 billion, based on a catalog of hundreds of products sold in the United States and abroad.

4.   Of relevance to this dispute is Covidien's ClosureFast™ System ("ClosureFast"). ClosureFast is also used to treat varicose veins, and has been on the market since 2006 and was developed beginning in 2004.  On information and belief, Covidien's global revenue for ClosureFast is between $200-$300 million each year.

5.   In January 2015, Covidien was acquired by Medtronic for a purchase price of, on information and belief, $42.9 billion.

6.   This litigation involves an improper attempt by Covidien to force a Venclose employee and named inventor to alter assignment records in the United States Patent & Trademark Office ("PTO"), and thereby claim ownership of Venclose's valuable intellectual property.

7.   In particular, Venclose seeks to lay an ownership claim to three patent applications on which Venclose's CEO, Mr. Brady Esch, is a named inventor: U.S. Provisional Patent Application No. 61/970,498 ("the '498 Provisional Application"); U.S. Patent Application No. 14/670,338 ("the '338 Application"); and International PCT Application No. PCT/US2015/022849 ("the '849 PCT Application") (collectively, "the Venclose Applications").

8.   However, on information and belief, each of the Venclose Applications were conceived and reduced to practice after Mr. Esch left Covidien's employ.

9.   For example, each the Venclose Applications were filed after Mr. Esch left Covidien's employ.  Additionally, the '338 and '849 PCT Applications were filed ***more than one year*** after Mr. Esch's employment with Covidien ended.

10. Each of the Venclose Applications name Mr. Esch as an inventor.  Both the '338 and '849 PCT Applications name additional inventors other than Mr. Esch.  All named inventors have duly assigned their rights to Venclose, and Venclose promptly recorded those assignments with the PTO.

11. Likely alarmed by reports that Venclose's innovative products are being well received in the marketplace, Covidien has initiated a flank attack on Venclose by bringing suit (followed almost immediately by a Motion for Preliminary Injunction) against Venclose's CEO, Mr. Brady Esch, as an individual in Massachusetts District Court (the "Massachusetts Action"). The Massachusetts Action is captioned *Covidien L.P. et al v. Brady Esch*, Case No. 1:16-cv-12410 (D. Mass.)  (complaint filed Nov. 28, 2016).  Attached here as **Exhibit A** is a true and correct copy of the complaint filed in the Massachusetts Action.

12. Venclose itself is not named as a party in the Massachusetts Action.  The Complaint generally alleges breach of contract with respect to a 2009 Non-Competition agreement and a 2013 Separation of Employment agreement between Mr. Esch and Covidien (or its predecessor Tyco HealthCare), and other related claims.  At all times under either agreement. Mr. Esch was a California resident and California employee of Covidien/Tyco.

13. Covidien's tactical attack on Venclose's CEO as an individual just before the Holidays is motivated by its understandable concern that doctors and other customers in the marketplace have been very favorably impressed with Venclose's EVSRF and digiRF products and, going forward, will likely favor Venclose's far newer and more advanced product over Covidien's older ClosureFast product, which has remained relatively staid and unchanged for over ten years.

14. Moreover, that Covidien's attempt to seek expedited relief is not in good faith is apparent from the fact that: (i) Mr. Esch's assignment to Venclose of his rights, title and interest in the intellectual property at issue took place in March of 2014—over *two years and nine months ago*; and (ii) by Covidien's own admissions in its Complaint, the alleged Covidien confidential information were published, and therefore publicly known, since at least October 2015—over *fourteen months ago*, when the '338 and '849 PCT Applications published.

(Exhibit A ¶¶ 54, 61, 107, and 122.)  These factors clearly militate against the need for any expedited relief against an individual with no remaining rights to the technology at issue in a forum that is manifestly burdensome and inconvenient for him.

15. Despite acknowledging that Mr. Esch—who at all relevant times was a resident of California (and was employed by Covidien in California)—only first filed the provisional patent application at issue nearly five months after he left Covidien's employ, Covidien is nevertheless asking the Massachusetts Court to force Mr. Esch to "correct records at the United States Patent and Trademark Office" to reflect what Covidien alleges is its ownership interest in Venclose's RF Catheter Applications.   (*See e.g.*, Exhibit A p.24, ¶ 6 (Request for Relief).)

16. In short, Covidien has knowingly asked for relief that cannot be granted from the wrong party in an expedited proceeding.  As its own Massachusetts Complaint acknowledges, as the Patent Office assignment records show, and as the face of the published applications reflect, all right, title and interest in the intellectual property at issue is owned outright by Venclose.  Mr. Esch himself retained no legal rights in the Venclose Applications and thus is not in a position to correct any assignment records at the Patent Office.  Covidien has thereby created a cloud over Venclose, its intellectual property and its business, thus necessitating the filing of this Complaint.

17. This suit arises under the patent laws because any ownership claim Covidien alleges was rendered null and void under 35 U.S.C. § 261 when Venclose acquired Mr. Esch's ownership stake in the Venclose Applications.  Venclose is a bona fide purchaser and is now the sole owner of all rights, title, and interest in the Venclose Applications.  Moreover, Covidien's claims rely on an interpretation of patent conception that contradicts established principles under federal law.

18. In any event, Covidien's original ownership claim is incorrect because Mr. Esch never assigned his original ownership rights to Covidien, nor did Covidien ever record an assignment with the PTO.

19. Covidien's claim to inventions that Mr. Esch conceived for the first time after he left his employment at Covidien is based on an illegal "holdover" clause in its employment agreement with Mr. Esch.  That clause purports to allow Covidien to appropriate property rights

1    to which it has no right under the laws of any state – and certainly not California, where Mr.

2    Esch has resided since 1987, where Mr. Esch at all times was employed by Covidien, and where

3    Venclose is based.  Under long-standing California law, Venclose obtained a property right

4    immediately to any inventions Mr. Esch conceived while working for Venclose, and pursuant to

5    valid California invention assignment contracts.  Such property rights were trade secrets

6    protected by California law – a law that strictly prohibits, and voids, "holdover" clauses.

7    Covidien's effort to divest Venclose of its property rights is illegal, against public policy, and

8    amounts to a land-grab.

9        20. In addition, the purported agreements on which Covidien relies to make its ownership

10    claim are void because they at least implicitly define an invention's date of conception in a

11    manner that is inconsistent with the federal patent law's definition of conception date.

12        21. The purported agreements are further void because they constitute impermissible

13    post-employment penalties that violate public policy.

14        22. An actual case or controversy now exists between Venclose and Covidien because

15    Covidien has filed the "Massachusetts Action" against Mr. Esch relating to the ownership of a

16    family of patent applications of which Venclose is the bona fide purchaser.  Although Venclose

17    is not named directly in the Massachusetts Action, an actual case or controversy between

18    Venclose and Covidien nevertheless exists because the Massachusetts Action seeks to challenge

19    Venclose's sole ownership of the RF Catheter Applications, as well as Venclose's ability to run

20    its business and commercialize the inventions disclosed in those applications.  For example,

21    Covidien also seeks to enjoin Mr. Esch, as Venclose's CEO, from participating in the

22    commercialization of Venclose's FDA-cleared medical devices.

23        23. On December 13, 2016, Covidien filed a motion for preliminary injunction in the

24    Massachusetts Action (the memorandum for which is attached here as **Exhibit B**) against Mr.

25    Esch.[1]  While the motion for preliminary injunction does not directly target Venclose, it does so

26

27        [1] For convenience, Venclose here attaches only the memorandum of points and authorities in support of Covidien's motion for preliminary injunction.  The full motion, including exhibits,

28    can be found at D.I. 15 to District of Massachusetts Case No. 1:16-cv-12410.

indirectly because Covidien seeks to "enjoin Esch from any efforts to develop, manufacture, or sell a product that includes, in part of in its entirety, any Covidien Confidential Information…" (Exhibit B at 20.)  Thus, as with its overall complaint in the Massachusetts Action, Covidien's motion for preliminary injunction is a transparent attempt to collaterally attack Venclose by enjoining its CEO from commercializing the inventions of the Venclose Applications.

## THE PARTIES

24. Plaintiff Venclose is a Delaware corporation with its principal place of business and headquarters at 2570 N. First Street, San Jose, California.

25. On information and belief, Defendant Covidien LP is a Delaware limited partnership with a principal place of business located at 15 Hampshire Street, Mansfield, Massachusetts.

26. On information and belief, Defendant Covidien Holding Inc. is a Delaware corporation with a principal place of business located at 15 Hampshire Street, Mansfield, Massachusetts.

## JURISDICTION AND VENUE

### This Court has Subject Matter Jurisdiction over this Action

27. This is an action for declaratory judgment regarding the bona fide purchaser rule (35 U.S.C. § 261), the determination of which arises under the patent laws of the United States, Title 35 of the United States Code.  This is also an action regarding the interpretation of patent conception arising under the patent laws of the United States.  Consequently, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

28. This is also an action for declaratory judgment regarding the ownership of patents. This issue is so related to the federal question issue of the bona fide purchaser rule that the two issues form part of the same case or controversy.  Consequently, this Court has jurisdiction over any such issues under 28 U.S.C. § 1367(a).

### This Court has Personal Jurisdiction over Covidien

29. This Court has personal jurisdiction over Covidien because Covidien has sufficient minimum contacts with the State of California, and specifically this district, such that the exercise of both general and specific jurisdiction over Covidien is proper.

30. General jurisdiction over Covidien in this district is proper because Covidien has engaged in systematic and continuous business operations throughout this district for several years.

31. As a first example of Covidien's systematic and continuous business operations in this district, Covidien has acquired multiple businesses headquartered and operating in this district.

32. In 2009, Covidien acquired San Jose-based VNUS Technologies ("VNUS").

33. In 2011, Covidien acquired Sunnyvale-based BARRX Medical.

34. In 2012, Covidien acquired Fremont-based CV Ingenuity.

35. Also in 2012, Covidien acquired Campbell-based Maya Medical.

36. As a second example of Covidien's systematic and continuous business operations in this district, Covidien has maintained offices and employed personnel in this district continuously for several years.

37. On information and belief, Covidien currently maintains offices at some or all of the following locations in this district: (1) 540 Oakmead Pkwy in Sunnyvale, CA; (2) 4280 Hacienda Drive in Pleasanton, CA; and/or (3) 173 Jefferson Drive in Menlo Park, CA.

38. After Covidien acquired VNUS in 2009, and continuing at least through 2013, Covidien maintained VNUS's office location at 5799 Fontanoso Way in San Jose.  At this location, Covidien employed personnel, manufactured products, and operated the majority of VNUS's former business.

39. On May 12, 2015, a former Covidien sales representative filed a lawsuit against Covidien.  (*Hayes v. Covidien L.P.*, Case no. 3:14-cv-02142 (complaint at D.I. 1-1).)  In his complaint, the former sales representative pled that "Covidien's West Coast Sales Office is headquartered in San Jose, California, [Hayes'] supervisors were headquartered in San Jose, Covidien trained managers in San Jose and conducted administrative and management functions in San Jose…"

40. As a third example of Covidien's systematic and continuous business operations in this district, Covidien has availed itself of the courts in this district.  On October 16, 2012,

Covidien filed a Complaint in this district in the case captioned *Covidien LP v. Life Partners Europe*, Case No. 3:12-cv-05338-EDL (N.D. Cal.).  On February 10, 2014, Covidien filed a Complaint in this district in the case captioned *Covidien LP v. Biolitec U.S. Inc.*, Case No. 3:14-cv-00616-EDL (N.D. Cal.).  In both instances Covidien was the plaintiff.

41. Covidien has also appeared as a defendant in at least two other actions in this district (Case Nos. 3:15-cv-02142-EDL and 3:15-cv-03094-EDL).  In those cases, Covidien did not challenge the court's personal jurisdiction over Covidien.

42. In addition to general personal jurisdiction, specific personal jurisdiction over Covidien in this district is also proper because Covidien has purposefully directed activities into this district that relate to the claims in this dispute.

43. As a first example of Covidien purposefully directing claim-related activities into this district, Covidien has alleged that Venclose's Founder and CEO, Brady Esch, was a former employee of Covidien's predecessor-in-interest, Tyco Healthcare Group LP.  (Exhibit A at 3.)  According to Covidien, Mr. Esch "became a Covidien employee in 2009 upon the acquisition of VNUS Technologies, with whom Esch was employed."  (*Id.* at 3-4.)  At all times during Mr. Esch's employment with Covidien and its predecessor-in-interest, Mr. Esch was located in Covidien's offices in this district, and the vast majority of his employment-related activities were specifically conducted in this district.

44. A second example of Covidien purposefully directing claim-related activities into this district relates to Covidien's sales of its ClosureFast system.  Covidien has alleged that Mr. Esch incorporated Covidien's confidential information about Covidien's Endovenous products (which include ClosureFast) into the patent applications that Venclose acquired from Mr. Esch.  (Exhibit A ¶¶ 100-127).  Thus, Covidien's activities in this district related to the ClosureFast system are related to Covidien's claims.

45. Publicly-available data on Medicare usage (which, on information and belief, represent approximately one-quarter to one-third of overall usage) indicate that Covidien's ClosureFast has been practiced extensively throughout this district for several years.

46. For example, Medicare usage data indicates that in 2012 at least 1,488 ClosureFast units were used in Medicare procedures in this district (5,734 statewide).  In 2013, at least 1,893 ClosureFast units were used in Medicare procedures in this district (9,435 statewide).  In 2014, at least 2,080 ClosureFast units were used in Medicare procedures in this district (12,794 statewide).  On information and belief, ClosureFast catheters are labeled for single-use only and should be disposed of after each procedure.  Thus, on information and belief, this procedure data involving ClosureFast reveals a corresponding sale of a ClosureFast catheter for each procedure performed in this district.  Also on information and belief, Covidien maintains employees whose job responsibilities include specifically directing sales of ClosureFast (including at least the aforementioned disposable catheters) into this district.

**Venue**

47. Venue is proper in this district pursuant to at least 28 U.S.C. §§ 1391 and 1400(b).  Covidien is subject to jurisdiction here for at least the reasons set forth above.

**NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING (L.R. 3-13)**

48. On November 28, 2016, Covidien filed the complaint in the Massachusetts Action against Venclose's CEO and Founder, Brady Esch.  The complaint in the Massachusetts Action alleges causes of action against Mr. Esch for breach of contract; breach of the implied covenant of good faith and fair dealing; and for a declaratory judgment that Mr. Esch previously assigned to Covidien each of U.S. Provisional Patent Application No. 61/970,498 ("the '498 Provisional Application"); U.S. Patent Application No. 14/670,338 ("the '338 Application"); and International PCT Application No. PCT/US2015/022849 ("the '849 PCT Application") (collectively, "the Venclose Applications").

49. The complaint in the Massachusetts Action does not expressly name Venclose as a party.  However, in the Request for Relief (Exhibit A at 24-25), Covidien seeks "preliminary and permanent injunctive relief, directing Esch to *correct records at the United States Patent and Trademark Office* reflecting the assignment the '498 provisional application and the '338 application to Covidien, to *correct records at the United States Patent and Trademark Office ("USPTO") and World Intellectual Property Organization* reflecting the assignment of the PCT

application to Covidien, and to ***correct record of title*** to the applications in all applicable patent offices." (*Id*; emphasis added.)  Mr. Esch is not the assignee of record and as such has no right to correct any such records at the USPTO.

50. Similarly, Covidien's complaint in the Massachusetts Action alleges that "According to the terms of the NNC Agreement, Covidien is at least a co-owner of the rights, title, and interest in the '338 application." (*Id.* ¶ 55.)

51. Covidien's complaint in the Massachusetts Action also alleges that "According to the terms of the NNC Agreement, Covidien is at least a co-owner of the rights, title, and interest in the ['849 PCT] application." (*Id.* ¶ 62.)

52. Covidien's complaint in the Massachusetts Action also alleges that "According to the terms of the NNC Agreement, Covidien is the rightful owner and assignee of all rights, title, and interest in the '498 provisional application, and all Inventions and disclosures in the '498 provisional application." (*Id.* ¶ 72.)

53. A dispute exists because Venclose maintains that it is the **sole** owner of all right, title, and interest to each of the Venclose Applications.  Covidien seeks to deprive Venclose of its ownership of the '498 Provisional Application, and to deprive Venclose of its sole ownership of the '338 Application and the '849 PCT Application.

54. Covidien's Request for Relief also seeks "Entry of injunctive relief, including preliminary and permanent injunctive relief, directing Esch not to use any Covidien Confidential Information in any ***Venclose*** product." (*Id.* at 24 (emphasis added).)

55. Thus, Covidien's allegations essentially seek to indirectly interfere and obstruct Venclose from using and commercializing the inventions of the Venclose Applications, even though Venclose is not a named party to the Massachusetts Action.

## **INTRADISTRICT ASSIGNMENT**

56. Under Civil Local Rules 3-2(c) and 3-5, this action, being a declaratory judgment action based on intellectual property claims, is appropriate for assignment on a district-wide basis.

**FACTUAL BACKGROUND**

**Venclose Obtained All Right, Title, and Interest to the Venclose Applications**

57. Venclose was founded in early 2014 to research and develop innovative products in the field of radiofrequency medical devices.  Brady Esch is a founder and CEO of Venclose.  At all relevant times, Venclose and Mr. Esch (as well as most of Venclose's other employees) have resided in this district.

58. Attached here as **Exhibit C** are true and correct copies of Mr. Esch's consulting and employment agreements with Venclose.  Under these agreements, Venclose owned as property rights any trade secrets Esch conceived during his work for and with Venclose, even before the company decided to submit patent applications based upon those trade secrets (and independent of whether those applications were later assigned to Venclose in a patent assignment agreement).

59. In any event, on information and belief, Mr. Esch did not conceive any inventions included in the Venclose Applications during his employment with Covidien.  Any conception occurred after termination of Mr. Esch's employment with Covidien.

60. On March 23, 2014, Brady Esch assigned all right, title, and interest in the '498 Provisional Application to Venclose.  A true and correct copy of this provisional patent application as well as Mr. Brady's assignment to Venclose is attached as **Exhibit D**.

61. On March 26, 2014, Venclose filed the '498 Provisional Application, naming Brady Esch as the sole inventor.  The '498 Provisional Application disclosed methods and devices for venous disease treatment using radiofrequency energy.

62. Also on March 26, 2014, Venclose recorded the assignment of the '498 Provisional Application by Mr. Esch with the USPTO.  A true and correct copy of the printout from the USPTO's recordation database is attached here as **Exhibit E.**

63. On March 26, 2015, Venclose filed United States Patent Application No. 14/670,338 ("the '338 Application").  The '338 Application claims devices and systems that incorporate a catheter that delivers radiofrequency energy to treat vein disease.  The '338 Application lists multiple inventors including Brady Esch, Darius A. Przygoda, Rory Thomas Christian, and Cody James Schinder.  The '338 Application published on October 1, 2015.  A true and correct copy of

1    the published patent application for the '338 Application (U.S. Patent Publication No.

2    2015/0272654) is attached here as **Exhibit F**.

3       64. On its face, U.S. Patent Publication No. 2015/0272654 identifies Venclose as the sole

4    owner of the '338 Application.  (*Id.*)

5       65. Also on March 25, 2015, Venclose filed International Application No.

6    PCT/US2015/022849 ("the '849 PCT Application").  The '849 PCT Application listed Brady

7    Esch and Darius Przygoda as the named inventors.  The '849 PCT Application claims a system

8    comprising a heating catheter used to treat vein disease.  A true and correct copy of the '849 PCT

9    Application is attached here as **Exhibit G**.

10       66. On June 18, 2015, Messrs. Esch, Przygoda, Christian, and Schindler each assigned all

11    right, title, and interest in the '338 Application and the '849 PCT Application to Venclose.  On

12    June 19, 2015, Venclose recorded the assignment of the '338 Application and the '849 PCT

13    Application by the named inventors with the USPTO.  A true and correct copy of this assignment

14    as well as the notice of recordation from the USPTO is attached here as **Exhibit H**.

15             **Venclose is a Bona Fide Purchaser Under 35 U.S.C. § 261**

16       67. Venclose has been assigned all right, title, and interest to each of the Venclose

17    Applications and any related patents and/or applications thereof.

18       68. Venclose paid valuable consideration in exchange for that assignment.

19       69. Venclose lacked any notice about Covidien's alleged ownership claim to the RF

20    Catheter Patents.

21       70. On information and belief, Covidien has never recorded any ownership interest in the

22    Venclose Applications.

23       71. By virtue of these facts, Venclose is a bona fide purchaser under 35 U.SC. § 261 for

24    each of the Venclose Applications.

25             **Covidien Is Not an Owner of the Venclose Applications**

26       72. In its complaint in the Massachusetts Action, Covidien alleges that it is properly an

27    owner (or co-owner) of all right, title, and interest to the Venclose Applications.  (*E.g.,* Exhibit A

28    ¶¶ 67-80.)

73. Covidien's allegations are premised on two purported agreements between Mr. Esch and Covidien: (1) a 2009 Non-Competition, Non-Solicitation, and Confidentiality Agreement; and (2) a 2013 Separation of Employment Agreement and General Release (collectively, the "Purported Covidien Agreements").  Covidien alleges that the Purported Covidien Agreements mandate assignments of the Venclose Applications from Mr. Esch to Covidien, even though **each** of the Venclose Applications was (on information and belief) conceived and reduced to practice after Mr. Esch's November 1, 2013 termination date with Covidien.  Indeed, only the '498 Provisional Application was filed within a year of that termination (and it was filed nearly five months after Mr. Esch left Covidien).  (*E.g. id.*).  The Purported Covidien Agreements are contained in Exhibit A to this Complaint.

74. However, none of the Purported Covidien Agreements actually effectuated an assignment of any of the Venclose Applications to Covidien.

**The Purported Covidien Agreements' Attempt to Claim Ownership Over California-Based Property Rights Violates Both California Law, California Public Policy, and Imposes an Illegal Post-Employment Penalty that Violates Venclose's Property Rights**

75. Covidien's claim to California property rights held by Venclose is illegitimate. Pursuant to California law, Venclose entered into valid invention assignment agreements with Mr. Esch that conform to both California Labor Code Section 2870 and the federal patent laws. (*See* Exhibit C.)  As a result, and again pursuant to California law, the moment that Mr. Esch conceived intellectual property relating to Venclose's business, such property rights immediately vested in Venclose as the sole owner of all right and title in such property rights.  Before any publication, such conceptions existed as trade secrets, which exist as property rights under California law.  Venclose thus had absolute discretion to include such conceptions – with contributions from co-inventors – in its patent applications.

76. Covidien has no basis to interfere with the automatic assignment of intellectual property rights from Mr. Esch to Venclose under California law, and it has no possible claim to California property rights held by Venclose.  The "holdover" clause in Covidien's agreement with Mr. Esch is illegal as to a California resident like Mr. Esch.  A former employer has no right

to appropriate the later-in-time inventions of its former employees, and the very notion offends

public policy.

**The Purported Covidien Agreements' Definition of Patent Conception Contradicts Federal Patent Law and Imposes an Illegal Post-Employment Penalty that Violates Venclose's Property Rights**

77. In its complaint in the Massachusetts Action, Covidien alleges that while employed

with Covidien (and its predecessor-in-interest Tyco Healthcare), Brady Esch entered into the

Purported Covidien Agreements.  A relevant passage from the purported 2009 Non-Competition,

Non-Solicitation, and Confidentiality Agreement states:

> You shall promptly disclose to the Company all Inventions (as defined in Subsection II.B), which are ***made or conceived by you***, either alone or with others, during the term of your employment with the Company, whether or not during working hours.

(Exhibit A ¶ 20 (emphasis added).)  However, this alleged agreement also provides a definition

of "conception" to mean:

> In addition, in order to avoid any dispute as to the date on which Inventions were made or conceived by you, they shall be ***deemed to have been made or conceived*** during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment ***or within one year after separation from employment***.

(*Id.* (emphasis added).)

78. The alleged agreement thus ascribes a meaning and/or definition of "conception" that

is inconsistent with its long-established interpretation under federal patent law.  To give but one

example, the USPTO describes conception thusly:

> Conception has been defined as the complete performance of the mental part of the inventive act and it is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice[.]   Conception is established when the invention is made sufficiently clear to enable one skilled in the art to reduce it to practice without the exercise of extensive experimentation or the exercise of inventive skill.  Conception has also been defined as a disclosure of an invention which enables one skilled in the art to reduce the invention to a practical form without exercise of the inventive faculty.

Manual of Patent Examining Procedure, § 2138.04 (9th ed. 2015) (internal quotations and

citations omitted).

79. The alleged agreement attempts to distort the meaning of conception by artificially setting the moment of conception in a manner inconsistent with the federal patent law. By altering the meaning of conception, the alleged agreement seeks to give Covidien an ownership claim to inventions Mr. Esch conceived (under the patent law meaning of the term) ***after*** his employment with Covidien had terminated. This distorted definition of "conception" is fundamentally at odds with the federal law meaning of patent conception. Consequently, the provisions of the Purported Covidien Agreements containing this improper definition of patent conception are illegal and unenforceable.

80. The alleged agreement also improperly restrains Mr. Esch's employment mobility and functions as an illegal post-employment penalty. Thus, of relevance here, it is a legally unenforceable basis for Covidien to rely on in its round-about attack on Venclose's intellectual property rights.

81. The alleged agreement also improperly interferes with Venclose's exercise of its business. On information and belief, Mr. Esch conceived his respective contributions to the Venclose Applications after he left Covidien's employ. Similarly, Mr. Esch reduced those inventions to practice while employed by Venclose, not Covidien. The alleged agreement therefore seeks to effectuate a forced assignment of some or all of Venclose's ownership rights in the Venclose Applications (rights obtained by an assignment from a Venclose employee) to Covidien.

**Venclose Seeks a Declaration that Covidien Cannot Directly or Indirectly Interfere with Venclose's Ownership, Commercialization, or Other Legal Use Of The RF Catheter IP**

82. As discussed above, Covidien seeks to interfere with Venclose's enjoyment and exercise of its products and intellectual property.

83. However, Venclose's rights in at least the '338 Application and the '849 PCT Application are wholly independent from any claim that Covidien may have with respect to Mr. Esch. Messrs. Esch, Przygoda, Christian, and Schindler are each named inventers of the '338 Patent Application. Each therefore originally possessed an independent ownership interests to

the '338 Patent Application.  And, as discussed above, each assigned his respective interest to Venclose on June 18, 2015.

84. Venclose is therefore an owner of the '338 Patent Application based on the ownership rights assigned to Venclose by the other named inventors.  Venclose's ownership of the '338 Application is irrespective of any claim by Covidien against Mr. Esch.  Venclose is therefore permitted under the law to practice the invention of the '338 Patent Application, and Covidien may not directly or indirectly seek to interfere with Venclose's ownership, use or commercialization of its intellectual property.

85. Also, Mr. Przygoda is named as an inventor of the '849 PCT Application.  He therefore originally possessed an independent and ownership interest to the '849 PCT Application.  And, as discussed above, he assigned this interest to Venclose on June 18, 2015.

86. Venclose is therefore an owner of the '849 PCT Application based on the ownership rights assigned to Venclose by Mr. Przygoda.  Venclose's ownership of the '849 PCT Application is irrespective of any claim by Covidien against Mr. Esch.  Venclose is therefore permitted under the law to practice the invention of the '849 PCT Application, and Covidien may not directly or indirectly seek to interfere with Venclose's ownership, use or commercialization of its intellectual property.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment that Venclose is the Sole Owner of All Right, Title, and Interest to the Venclose Applications Pursuant to the Bona Fide Purchaser Rule (35 U.S.C. § 261))**

87. Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

88. Upon information and belief, there exists an actual controversy as to whether Venclose is a bona fide purchaser of all right, title, and interest in the Venclose Applications. Covidien has filed a lawsuit in Massachusetts claiming ownership (or co-ownership) to the Venclose Applications.

89. As discussed above, the inventors of each respective application assigned Venclose all right, title, and interest in the Venclose Applications.

90. Venclose tendered valuable consideration in exchange for this assignment.

91. When Venclose obtained all right, title, and interest to the Venclose Applications, it did so without any notice or knowledge of any valid legal, equitable, or other claim of ownership by Covidien as to these patent applications.

92. On information and belief, Covidien has never recorded in the USPTO any legal, equitable, or other claim of ownership of the Venclose Applications.

93. Venclose is therefore a subsequent purchaser for valuable consideration without notice and any ownership interest Covidien may have had is now void by operation of 35 U.S.C. § 261.

94. Venclose is therefore entitled to a judicial declaration that (1) Venclose is a bona fide purchaser under 35 U.S.C. § 261; (2) that any ownership interest by Covidien (if one ever existed) is void; and (3) that Venclose is the sole owner of all right, title, and interest in the Venclose Applications.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment that Covidien Does Not Own Any of the Venclose Applications)

95. Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

96. Upon information and belief, there exists an actual controversy as to whether Covidien was assigned any legal or equitable ownership rights of the Venclose Applications. This controversy is described fully in Exhibit A, which Venclose incorporates here by reference.

97. For the reasons discussed above, Mr. Esch never assigned any ownership interest in the Venclose Applications to Covidien.

98. Consequently, Venclose seeks (and is entitled to) a declaration that (1) Covidien has no ownership interest in the Venclose Applications and (2) Venclose is the sole owner by assignment of all right, title, and interest in the Venclose Applications.

**THIRD CLAIM FOR RELIEF**

**(Declaration that Covidien's Definition of Conception in its Purported Agreements with Brady Esch Contradict with Federal Patent Law And Are Thus Void in Whole or At Least In Part)**

1.   Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

2.   Upon information and belief, there exists an actual controversy as to the moment when Brady Esch conceived his contribution to the Venclose Applications.  This controversy is discussed above and described fully in Exhibit A, which Venclose incorporates here by reference.

3.   Covidien alleges that the Purported Covidien Agreements dictate that any invention conceived *after* (but within one year of) Brady Esch's termination from Covidien was conceived *during* his employment with Covidien.

4.   Such an allegation improperly alters the meaning of conception under the patent laws of the United States, Title 35 of the United States Code.  Consequently, Venclose seeks (and is entitled to) a declaration that (1) Covidien's contended meaning of conception contradicts the meaning of conception under the patent laws of the United States, Title 35 of the United States Code; and (2) the provisions of the Purported Covidien Agreements containing this improper meaning of conception conflict with federal public policy and are therefore void.

**FOURTH CLAIM FOR RELIEF**

**(Declaration that the Invention Assignment Provisions in Covidien's Purported Agreements with Brady Esch Are Void)**

5.   Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

6.   Upon information and belief, there exists an actual controversy as to whether the invention assignment provisions in the Purported Covidien Agreements are unenforceable and in violation of California law and/or public policy.  This controversy is described above and discussed fully in Exhibit A.

7.   The invention assignment provisions at issue are not limited to inventions conceived (as the term is applied under the federal patent laws) while Mr. Esch was employed by Covidien, but encompass inventions that Mr. Esch conceived even after his employment with Covidien terminated.

8.   The invention assignment provisions at issue are also not limited to inventions that are the product of Covidien's confidential information, but encompasses any activity related to Covidien's "actual or anticipated business or research activities."  (Exhibit A at ¶ 21.)  The provisions at issue are this improperly overbroad under public policy.

9.   Consequently, Venclose seeks (and is entitled to) a declaration that the invention assignment provisions in the alleged agreements constitute post-employment penalties that violate public policy.

**FIFTH CLAIM FOR RELIEF**

**(Declaratory Judgment that Venclose Owns and May Practice and Commercialize the Inventions of RF Catheter Applications)**

10. Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

11. Upon information and belief, there exists an actual controversy as to whether Venclose may practice the inventions of the Venclose Applications.  Covidien has filed a lawsuit in Massachusetts seeking, among other things, to interfere with Venclose ownership, use and commercialization of the inventions disclosed in the Venclose Applications.

12. However, as discussed above, Venclose is the rightful and sole owner of the Venclose Applications.  Venclose is therefore lawfully privileged to practice the Venclose Applications without interference by Covidien, and Venclose seeks a judicial declaration to that effect.

**SIXTH CLAIM FOR RELIEF**

**(Declaratory Judgment that only Venclose Can Assign or Correct Patent Office Records with Respect to the Venclose Applications)**

13. Venclose repeats and re-alleges the allegations of the preceding paragraphs in this Complaint as if fully set forth herein.

14. Upon information and belief, there exists an actual controversy as to who may assign or correct patent office records with respect to the Venclose Applications.  Covidien has filed a lawsuit in Massachusetts seeking, among other things, for "[e]ntry of injunctive relief, including preliminary and permanent injunctive relief, directing Esch to correct records at the United States Patent and Trademark Office reflecting the assignment the '498 provisional application and the '338 application to Covidien, to correct records at the United States Patent and Trademark Office and World Intellectual Property Organization reflecting the assignment the PCT application to Covidien, and to correct record of title to the applications in all applicable patent offices" (Exhibit A at p. 24.)

15. However, as discussed above, Brady Esch has already assigned all ownership rights in the Venclose Applications to Venclose.

16. Thus, Mr. Esch is therefore no longer entitled to "correct" any records regarding the assignment of the Venclose Applications with the PTO.  As the sole owner of all right, title, and interest in the Venclose Applications, the ability to "correct" records rests solely with Venclose. Venclose seeks a declaration to this effect.

## PRAYER FOR RELIEF

WHEREFORE, Venclose prays for judgment and relief as follows:

a)	A declaration that Venclose is a bona fide purchaser under 35 U.S.C. § 261;

b)	A declaration that Venclose is the sole owner of the '498 Provisional Application;

c)	A declaration that Venclose is the sole owner of the '338 Application;

d)	A declaration that Venclose is the sole owner of the '849 PCT Application;

e)	A declaration that Covidien has no ownership interest in the '498 Provisional Application;

f)	A declaration that Covidien has no ownership interest in the '338 Application;

g)	A declaration that Covidien has no ownership interest in the '849 PCT Application;

1        h)      A declaration that the invention assignment provisions of the Purported Covidien

2  Agreements apply an incorrect definition of patent conception that contradicts the patent laws of

3  the United States, Title 35 of the United States Code and are therefore void;

4        i)      A declaration that the invention assignment provisions of the Purported Covidien

5  Agreements constitute impermissible post-employment penalties that violate public policy and are

6  therefore void;

7        j)      A declaration that the invention assignment provisions of the Purported Covidien

8  Agreements constitute an impermissible taking of Venclose's exclusive intellectual property

9  rights to inventions reduced to practice by Mr. Esch while employed by Venclose;

10        k)      A declaration that Covidien is not entitled to directly or indirectly interfere with

11  Venclose's ownership, commercialization or other use of its the inventions of the Venclose

12  Applications;

13        l)      A declaration that only Venclose can assign or correct USPTO records about the

14  Venclose Applications;

15        m)      A declaration that is an exceptional case, and including an award to Venclose for

16  its attorney fees and costs; and

17        n)      Such additional relief as the Court may deem appropriate and just under the

18  circumstances.

19  Dated:  December 28, 2016                  WILSON SONSINI GOODRICH & ROSATI

20                                          Professional Corporation

21

22                                         By: /s/ Vera M. Elson

23                                            Vera M. Elson

24                                         Attorneys for Plaintiffs
                                            VENCLOSE INC.

25

26

27

28