UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

VENCLOSE INC.,

          Plaintiff,

   v.

COVIDIEN HOLDING, INC., et al.,

          Defendants.

Case No.  16-cv-07372-EJD

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 43

     Plaintiff Venclose, Inc. ("Venclose") brings the instant declaratory judgment suit against Defendants Covidien Holding, Inc. et al. ("Covidien" or "Defendants").  Presently before the Court is Covidien's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  Pursuant to Civil Local Rule 7-1(b), the Court finds the instant motion suitable for decision without oral argument and hereby VACATES the hearing set for August 10, 2017 at 9:00 A.M.  For the reasons set forth below, the motion is GRANTED.

## I.   BACKGROUND

### A.   Factual Background

     Venclose is a Delaware corporation with its principle place of business in San Jose, California.  Compl. ¶ 24, Dkt. No. 1.  Venclose researches and develops radiofrequency medical devices for treating vein disease commonly known as "varicose veins."  *Id*. ¶ 1, 57.  Venclose was founded in early 2014 by Brady Esch, its current CEO.  *Id*. ¶ 57; Mot. 5, Dkt. No. 43; Opp. 4, Dkt. No. 46.

     Defendants are a Delaware limited partnership and a Delaware corporation with their principle places of business in Mansfield, Massachusetts.  Compl. ¶¶ 25-26.  They employ over

40,000 employees worldwide. *Id.* ¶ 2. For over 10 years, Defendants have been developing and selling the ClosureFast System ("ClosureFast"), which is also used to treat varicose veins. *Id.* ¶ 4.

The parties are not unfamiliar with each other. Mr. Esch, Venclose's founder and CEO, worked for Covidien starting in 2009 when his employer at the time, VNUS Technologies, was acquired by Covidien. Compl. Ex. A at 1-25 ("D. Mass. Compl.") ¶ 14.[1] When he joined Covidien, Mr. Esch, along with all of the other employees from VNUS's San Jose, California facility, signed a "Non-Competition, Non-Solicitation and Confidentiality Agreement," dated December 16, 2009 ("NNC Agreement"). *Id.* ¶ 15; D. Mass. Compl. Ex. A. The NNC Agreement provided, in relevant part:

> You shall promptly disclose to the Company all Inventions (as defined in Subsection II.B), which are made or conceived by you, either alone or with others, during the term of your employment with the Company, whether or not during working hours. Such inventions directly or indirectly relate to matters within the scope of your duties or field of responsibility during employment with the Company, or are based on your knowledge of the actual or anticipated business or interests of the Company, or are aided by the use of time, materials, facilities, or information of the Company. You will not assert any rights under or to any Inventions as having been made or acquired by you prior to being employed by the Company unless such Inventions have been identified to the Company in writing on a document signed by you at the time of hire. In addition, in order to avoid any dispute as to the date on which Inventions were made or conceived by you, they shall be deemed to have been made or conceived during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment or within one year after separation from employment.

NNC Agreement § II.A. The NNC Agreement defined "Invention" as:

> Herein, "Invention" means, whether or not patentable or copyrightable, the conception, discovery or reduction to practice of any new idea, technology, device, method, design, trade secret, composition of matter or any improvement thereto, including but not limited to any new articles of manufacture or any improvement to existing articles of manufacture, any new apparatus or process/methods for

---

[1] As discussed below, Covidien has sued Venclose in the District of Massachusetts, Case No. 1:16-cv-12410-NMG. The Massachusetts Complaint and its attachments have been filed as Ex. A to Compl., Dkt. No. 1-1. To avoid any confusion, the Court adopts the following nomenclature: the Massachusetts Complaint ("D. Mass. Compl.") is located at Dkt. No. 1-1 at 1-25; Ex. A to the Massachusetts Complaint ("NNC Agreement") is located at Dkt. No. 1-1 at 26-32; Ex. B to the Massachusetts Complaint ("Separation Agreement") is located at Dkt. No. 1-1 at 33-46; Ex. C to the Massachusetts Complaint ("the '498 application") is located at Dkt. No. 1-1 at 47-87; Ex. D to the Massachusetts Complaint ("the '338 application") is located at Dkt. No. 1-1 at 88-141; Ex. E to the Massachusetts Complaint ("the '859 PCT application") is located at Dkt. No. 1-1 at 142-229; Ex. F to the Massachusetts Complaint ("FDA Approval") is located at Dkt. No. 1-1 at 230-37.

2

making or using a composition of matter or article of manufacture, any computer software or any designs relating thereto, which relate to the Company's actual or anticipated business or research activities or are suggested by or which result directly or indirectly from use of the Company's information, time materials, or facilities.

NNC Agreement § II.B.

Mr. Esch worked for Covidien until November 1, 2013. D. Mass. Compl. ¶ 17. Upon separation, Mr. Esch signed a "Separation of Employment Agreement and General Release," dated December 17, 2013 ("Separation Agreement"). *Id.* ¶ 19; D. Mass. Compl. Ex. B. The Separation Agreement provided, in relevant part:

Employee agrees that Employee shall continue to abide by all agreements and policies regarding non-disclosure of confidential information that applied during Employee's employment and shall not, directly or indirectly, use, make available, sell, disclose or otherwise communicate to any person, other than in the course of the Employee's assigned duties and for the benefit of the Company, either during the period of the Employee's employment or at any time thereafter, any nonpublic, proprietary or confidential information, knowledge or data relating to the Company, any of its subsidiaries, affiliated companies or businesses, which shall have been obtained by the Employee during Employee's employment by the Company or any of its affiliates or subsidiaries. . . .

Separation Agreement § 4(a).

Several months later, in early 2014,[2] Mr. Esch founded Venclose. Opp. 4; *see* Compl. ¶ 57. Sometime in 2014 or 2015,[3] Mr. Esch entered into a consulting agreement ("Consulting Agreement") with Venclose, in which he assigned to Venclose all rights, title, and interest in any inventions he conceived of while at Venclose. Compl. Ex. C ("Consulting Agreement") at 2-3.

On March 26, 2014, Venclose filed Provisional Patent Application No. 61/970,498 ("the '498 application"), naming Mr. Esch as the sole inventor. Compl. ¶ 61. Two days earlier, on March 24, he signed an agreement "effective as of March 23, 2014" assigning the '498 application to Venclose. *See* Compl. Ex. D.

---

[2] In its motion, Covidien states that Mr. Esch founded Venclose in January 2014. Mot. at 5. In its opposition, Venclose states that Mr. Esch founded Venclose on February 29, 2014. Opp. at 4.
[3] The Consulting Agreement states that it "is made and entered into as of January 15, 2014." Compl. Ex. C at 1. Venclose argues that "2014" is a "beginning-of-the-year typo," and that the document should have actually stated that the Consulting Agreement "is made and entered into as of January 15, 2015." Opp. at 14-15. Venclose argues that the filename listed in the footer of the document, as well as the attached schedules that are signed and dated in 2015, support this inference. *Id.* Covidien does not actually dispute that this is a typo, but argues that this difference is irrelevant. Reply at 5.

Roughly one year later, on March 25, 2015, Venclose filed International Application No. PCT/US2015/022849 ("the '849 PCT application"), naming Brady Esch and Darius Przygoda as inventors. Compl. ¶ 65; Compl. Ex. G. On March 26, 2015, Venclose filed Patent Application No. 14/670,338 ("the '338 application"), naming Brady Esch, Darius A. Przygoda, Rory Thomas Christian, and Cody James Schinder as inventors. Compl. ¶ 63; Compl. Ex. F. On June 18, 2015, all of the named inventors of both applications assigned their rights in these applications to Venclose. Compl. ¶ 66; Compl. Ex. H.

**B. Procedural Background**

On November 28, 2016, Covidien sued Mr. Esch in the District of Massachusetts, Case No. 1:16-cv-12410-NMG ("the Massachusetts Action"), alleging that he breached the NNC Agreement and the Settlement Agreement by disclosing Covidien's confidential information in the '948 application, '849 PCT application, and '338 application (collectively, the "Applications at Issue") and also by attempting to assign the Applications at Issue to himself. D. Mass. Compl., Dkt. No. 1-1 at 1-25. Covidien also alleged breach of the implied covenant of good faith and fair dealing and sought declaratory judgment that Mr. Esch had already assigned the Applications at Issue to Covidien. *Id.* Shortly thereafter, Covidien moved for a preliminary injunction enjoining Mr. Esch from any efforts to develop, manufacture, or sell a product that included certain alleged Covidien intellectual property. Compl. Ex. B. The District of Massachusetts court granted the preliminary injunction on January 11, 2017. Case No. 1:16-cv-12410-NMG, Dkt. No. 38.

Meanwhile, on December 28, 2016, Venclose filed the instant action, seeking declaratory judgment that (1) it owns the Applications at Issue based on the bona fide purchaser rule under 35 U.S.C. § 261; (2) Covidien does not own the Applications at Issue; (3) the NNC Agreement is void because its definition of "conception" contradicts federal patent law; (4) Esch's assignment provisions in the NNC Agreement are void; (5) Venclose owns and may practice the Applications at Issue; and (6) only Venclose may assign or correct records at the Patent Office. Compl. ¶¶ 87-16. The complaint alleges that the Court has subject matter jurisdiction because its declaratory judgment claims concern the bona fide purchaser rule and the interpretation of "conception" under federal patent law, and the Court can exercise supplemental jurisdiction over the remainder. *See*

*id.* ¶¶ 27-28.

Covidien responded by filing the instant motion to dismiss on April 14, 2017. Dkt. No. 43 ("Mot."). Venclose filed its opposition brief on April 28. Dkt. No. 46 ("Opp."). Covidien replied on May 5. Dkt. No. 49 ("Reply").

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may be either facial or factual. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, the challenge is facial, the Court applies essentially the same standard as Rule 12(b)(6): all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. *Wolfe*, 392 F.3d at 362.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal jurisdiction can generally arise in two ways: (1) from the presence of a federal question, or (2) from diversity of the parties. *See* 28 U.S.C. §§ 1331 (federal question), 1332 (diversity). Under 28 U.S.C. § 1331, federal question jurisdiction lies if, on the face of a "well-pleaded complaint," a cause of action is created by federal law or, alternatively, is one that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, (1983); *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense," that determines whether there is subject matter

jurisdiction over the case. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).

In patent cases, 35 U.S.C. § 1338(a) provides federal courts with exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents . . . ." The United States Supreme Court has "interpreted the phrase 'arising under' in [§ 1331 and § 1338(a)] identically, applying [its] § 1331 and § 1338(a) precedents interchangeably." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Thus, a federal court has exclusive jurisdiction over a patent case under § 1338(a) if, from the face of the well-pleaded complaint, a cause of action is created by federal patent law or there is a federal patent issue in a state law claim that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 257-58; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Whether subject matter jurisdiction exists is a threshold question that must be addressed before reaching the merits of an action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

## B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must be construed in the light most favorable to the non-moving party, and all material allegations in the complaint are taken as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). This rule does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While a complaint does not need detailed factual allegations to survive a 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* Under the Supreme Court's decisions in *Twombly* and *Iqbal*, this threshold requires that the complaint contains "sufficient factual matter . .

. to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.    DISCUSSION

Covidien moves to dismiss Venclose's complaint on two grounds: (1) this Court lacks subject matter jurisdiction under Rule 12(b)(1); and (2) Venclose has failed to state a claim for relief under Rule 12(b)(6).  The Court addresses each in turn.

### A.    Subject Matter Jurisdiction Under Rule 12(b)(1)

Covidien argues that the allegations in Venclose's complaint are insufficient to establish subject matter jurisdiction under Rule 12(b)(1) because four of its six claims (Counts 2 and 4-6) are pure state law claims and the remainder (Counts 1 and 3)—although touching on federal patent law—do not "aris[e] under any Act of Congress relating to patents" within the meaning of § 1338(a).  Mot. 8-15.  Venclose disagrees, arguing that the claims in its complaint "aris[e] under" federal patent law because they involve questions relating to patent assignment and ownership, inventorship, and the meaning of "conception."  Opp. 6-13.

As an initial matter, the Court agrees with Covidien that all but Counts 1 and 3 in Venclose's complaint are purely state law claims.  Counts 2, 4, and 5 are contract claims that simply turn on the construction of the NNC Agreement, Separation Agreement, and/or Consulting Agreement under state law.  Compl. ¶¶ 95-98, 5-12.  Count 6, although relating to U.S. Patent & Trademark Office records, turns entirely on the question of who owns the Applications at Issue. *See* Compl. ¶¶ 13-16.  Therefore it too does not, by itself, raise any questions relating to federal patent law. *See id*.  Thus, if subject matter jurisdiction exists at all, either Count 1 or Count 3 must supply it.  The Court assesses each in more detail below.

#### i.    Count 1

Count 1 seeks declaratory judgment that Venclose is the sole owner of the Applications at Issue pursuant to the bona fide purchaser rule under 35 U.S.C. § 261.  Compl. ¶¶ 87-94.  Covidien argues that this claim does not "aris[e] under" federal patent law because (1) § 261 is, at most, a federal defense to a state law ownership claim and therefore does not create a federal cause of action; and (2) it is not a state law claim that presents a "substantial" question of federal law

because it relates to a "fact-bound situation specific" dispute and does not invoke weighty federal issues. Mot. 9-13. Venclose does not dispute that § 261 does not create a federal cause of action, but nevertheless broadly argues that adjudication in federal court is appropriate because its case fundamentally relates to patent assignment and patent inventorship, the latter of which has a corresponding cause of action under 35 U.S.C. § 256. Opp. 5-10.

The Court agrees with Coviden that Count 1 does not state a claim that "aris[es] under" federal patent law under § 1338(a). As the parties agree, § 261 does not provide a cause of action. Thus, the only way Count 1 can invoke federal patent question jurisdiction is if it raises a question of patent law that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 257-58.

Walking through these factors, the Court first notes that the bona fide purchaser rule under § 261 is necessarily raised and actually disputed. In order to decide ownership of the Applications at Issue, a factfinder must determine whether § 261 insulates Venclose from potential ownerships claims that Covidien has, and the parties actually dispute whether § 261 protects Venclose.

However, the Court does not find that this issue is substantial. In determining whether a federal issue is "substantial," "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Instead, "[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id*. For example, in *Grable*, 545 U.S. at 315, a case that involved the question of whether the IRS had complied with certain notice requirements before seizing property, the Supreme Court found the case raised a substantial federal question because of the Government's "direct interest in the availability of a federal forum to vindicate its own administrative action." By contrast, in *Gunn*, 568 U.S. at 262-63, a legal malpractice case that involved the question of whether an experimental use argument would have changed the result of a patent infringement proceeding, the Supreme Court found there was no substantial federal question because the federal patent issue (experimental use) was only decided in the hypothetical and the outcome was "fact-bound and situation-specific."

8

This case is more similar to *Gunn* than *Grable*. The question of whether the bona fide purchaser rule under § 261 protects Venclose's ownership claims to the Applications at Issue is "fact-bound and situation-specific"—it turns on the extent to which Venclose had notice of Mr. Esch's alleged previous obligations to Covidien and whether "valuable consideration" was exchanged between Venclose and Mr. Esch. The parties do not dispute the interpretation of the bona fide purchaser rule; only its application. Thus, a state court's adjudication of this issue will not extend more broadly than the specific facts of this case. As such, the government's interest in "the development in a uniform body of [patent] law," *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989), is small. There are also no other important federal interests—such as the Government's interest in a federal forum for its administrative actions in *Grable*—that are at stake here. Thus, for these reasons, Count 1 does not raise a "substantial" federal question.

The Court also finds that the bona fide purchaser question in this case is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Questions of property ownership—including patent ownership—are traditionally state law issues. *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) ("[T]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts."). Here, the broader question is ownership of the Applications at Issue. The bona fide purchaser rule is simply one defense. Thus, if anything, adjudicating these issues in state court most appropriately respects the federal-state balance approved by Congress. Accordingly, because Count 1 does not raise a substantial question of federal patent law and because it is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," it does not "aris[e] under" federal patent law under § 1338(a).

Venclose's arguments to the contrary are unavailing. First, with respect to inventorship, the Court finds this consideration irrelevant. "It is elementary that inventorship and ownership are separate issues." *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). Count 1—as also Venclose's other claims—does not seek correction of inventorship under 35 U.S.C. § 256, so § 256 cannot serve as a basis for subject matter jurisdiction for the claims articulated in its complaint. Second, with respect to assignment, the Court disagrees that the

9

assignments that took place here in some way invoke a question of federal patent law. "[S]tate law governs the interpretation of contracts generally," *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008)—including contracts assigning patent rights. While federal patent law may play a role in the interpretation of certain assignment provisions (such as, for example, "whether a patent assignment clause creates an automatic assignment or merely an obligation to assign," *id.*), Venclose has not identified any such assignment provisions that invoke federal patent law (much less ones that raise "substantial" questions that satisfy *Grable*). Thus, the fact that this case generally relates to patent assignment cannot serve as a basis for subject matter jurisdiction.

Accordingly, for these reasons, Court 1 does not "aris[e] under" federal patent law pursuant to § 1338(a). The Court lacks subject matter jurisdiction over this claim.

### ii.    Count 3

Count 3 seeks declaratory judgment that Covidien's definition of "conception" in the NNC Agreement "contradicts the meaning of conception under the patent laws of the United States" and that the "provisions . . . containing this improper meaning of conception conflict with federal public policy and are therefore void." Compl. ¶¶ 1-3. Covidien argues that this claim also does not "aris[e] under" federal patent law because it effectively seeks to assert federal preemption as a defense, which is not a federal cause of action under the well-pleaded complaint rule. Mot. 13-15. Covidien also argues that Count 3 does not necessarily raise a substantial question of federal patent law because "conception" is a defined term in the NNC Agreement that is untethered from how it is legally defined in patent law. *Id.* Venclose does not dispute that Count 3 does not invoke a federal cause of action, but disagrees that "conception," as used in the NNC Agreement, can be divorced from its meaning in patent law. Opp. 12-13. According to Venclose, it is impermissible for the NNC Agreement to define "conception" more broadly than what patent law allows and the NNC Agreement should be deemed void on that basis. *Id.*

The Court agrees with Covidien that Count 3 does not state a claim that "aris[es] under" federal patent law under § 1338(a). As the parties agree, Count 3 does not articulate a federal cause of action—instead, it only uses federal preemption as a defense to Covidien's contract

claims. Thus, as with Count 1, the only way the Court can exercise subject matter jurisdiction is if Count 3 raises a question of patent law that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 257-58.

This test fails on the first factor: Count 3 does not necessarily raise a question of federal patent law. "Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish . . . ." *Foster Poultry Farms, Inc. v. Certain Underwriters at Lloyd's, London*, 161 F. Supp. 3d 932, 945 (E.D. Cal. 2016) (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 364 (S.D.N.Y. 2016)). This includes agreements made by specially-defined terms, which may or may not have other meanings in other contexts. This is precisely what happened here: the NNC Agreement explicitly provided that it covered "Inventions," which it defined as something broader than inventions recognized by patent law ("whether or not patentable or copyrightable"). NNC Agreement § II.A. The NNC Agreement also provided its own definition of what it meant for an invention to be "conceived:" "[Inventions] shall be deemed to have been made or conceived during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment or within one year after separation from employment." NNC Agreement § II.B. Thus, by its own terms, the NNC Agreement is not governed by federal patent law—"invention" and "conce[ption]" are instead their own legal constructs, which Mr. Esch and Covidien agreed to at arm's length.

In *Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1324 (Fed. Cir. 1992), the Federal Circuit reached a similar conclusion for a contract where AT&T employees had agreed to assign all "inventions . . . conceived" during their employment:

> We disagree with the district court that conception of inventions, as used in the employment agreement, is solely a technical question of patent law. The former employees pledged to assign AT & T all rights to such inventions, but the contract sheds no further light on the meaning of inventions. Notwithstanding, there is no reason to assume it meant to cover only those which are patentable. It could include unpatentable inventions and inventions held as trade secrets as well. Likewise, when an invention was conceived may be more a question of common sense than of patent law. For example, if what the employees "conceived" at AT & T had not been patentable, or no patent had been sought, but it nevertheless was treated as a

United States District Court
Northern District of California

trade secret, their conduct still could have been in breach of the contract. In other words, the contract may have used conception in its generic, broadest sense. We will not assume a bob-tailed meaning that could lead to derogation of the primary right of the state courts to decide what state law has to say about this contract.

This reasoning applies with even more force here where, unlike the AT&T contract, as the NNC Agreement actually provides explicit definitions for "invention" and "conce[ption]" that differ from their meaning in patent law. Accordingly, Count 3 does not "necessarily raise" a question of federal patent law. As such, the Court does not have subject matter jurisdiction over this claim.

### iii. Conclusion

In sum, neither Count 1 nor Count 3 "aris[es] under" federal patent law pursuant to § 1338(a). As such, they belong in state court. Because all of the remaining claims in Venclose's complaint are also state law claims, the Court lacks subject matter jurisdiction under Rule 12(b)(1). Accordingly, Covidien's motion to dismiss is GRANTED.

### B. Failure to State a Claim

Covidien argues in the alternative that Counts 1 and 3 should be dismissed because they fail to plausibly state a claim for relief under Rule 12(b)(6). Because the Court lacks subject matter jurisdiction under Rule 12(b)(1), it need not reach this issue.

## IV. LEAVE TO AMEND

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011). Absent a showing of prejudice, delay, bad faith, or futility, there is a strong presumption in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, courts can dismiss without leave to amend if "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (quoting *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)); *see also Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000) ("a district court acts within its discretion to deny leave to amend when amendment would be futile").

Here, no consistent amendment could support a finding of subject matter jurisdiction under Rule 12(b)(1). First, with respect to Count 1, Venclose's theory is that the bona fide purchaser rule under § 261 provides a defense to Covidien's contract claims. As discussed above, this is

insufficient as a matter of law to confer federal patent question jurisdiction under § 1338(a). No further allegations consistent with the original complaint could change this conclusion. Second, with respect to Count 3, Venclose's theory is that preemption by federal patent law relating to "conce[ption]" provides a defense to Covidien's contract claims. As also discussed above, this legally cannot provide a basis for federal patent question jurisdiction under § 1338(a). No additional factual allegations would change this result. Thus, in both cases, amendment would be futile. For this reason, the Court will dismiss Venclose's complaint without leave to amend.

## V.    CONCLUSION

This Court lacks subject matter jurisdiction over Venclose's claims, as none of the claims present a federal question. In particular, Count 1 neither articulates a federal cause of action nor raises a "substantial" question of federal patent law. Count 3 neither articulates a federal cause of action nor "necessarily raise[s]" a question of federal patent law. Accordingly, Covidien's motion to dismiss is GRANTED. Venclose's complaint is dismissed without leave to amend. The Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: August 4, 2017

EDWARD J. DAVILA
United States District Judge